## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

TAIZHOU YUANDA INVESTMENT
GROUP CO., LTD., TAIZHOU YUANDA
FURNITURE CO., LTD., and TAIZHOU
YUANDA TRAVELLING ARTICLES CO.,
LTD.,

        Plaintiffs,

    v.

Z OUTDOOR LIVING, LLC, AFG, LLC,
CASUAL PRODUCTS OF AMERICA, LLC,
DON CORNING, ERIN CORNING,
KENDRA FARLEY, and PETE HILL,

        Defendants.

Case No. 19-CV-875

### COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiffs, Taizhou Yuanda Investment Group Co., Ltd., Taizhou Yuanda Furniture Co., Ltd., and Taizhou Yuanda Travelling Articles Co., Ltd., (together "TZY"), by counsel, for their Complaint for Damages and Jury Demand against Defendants, Z Outdoor Living, LLC ("Z Outdoor"), AFG, LLC ("AFG"), Casual Products of America, LLC ("CPA"), Don Corning ("Mr. Corning"), Erin Corning ("Ms. Corning"), Kendra Farley ("Ms. Farley"), and Pete Hill ("Mr. Hill") and collectively ("Defendants") state as follows:

#### INTRODUCTION

This case is about Defendants' scheme to defraud TZY of millions of dollars and their breach of multiple promises to pay TZY money.

TZY manufactures outdoor furniture and other related products. Defendants purchase those items from TZY for re-sale to Defendants' customers. To help develop Defendants' business at the outset, TZY loaned Defendants millions of dollars (the vast majority of which remains unpaid). Over the last two years, Defendants also have purchased, received, re-sold, and

presumably been paid for (by their customers) furniture from TZY (totaling approximately $14 million), but have refused to make payments to TZY.

In addition to the their unjustified repayment refusals, the Defendants have made a number of false statements to TZY to ensure that TZY will continue to loan Z Outdoor money, procure materials, and manufacture goods for which the Defendants have no intent to repay TZY. In total, the Defendants' breaches and fraudulent scheme have deprived TZY of nearly $20 million.

## PARTIES AND CITIZENSHIP

1. Taizhou Yuanda Investment Group Co., Ltd. is a Chinese company organized under the laws of China, and as a limited company (Ltd.), is its own legal entity made up of one or more members, none of which are US citizens, and with its principal place of business located at: High-Tech Industrial Park, Taixing, Jiangsu, 225402, People's Republic of China. Taizhou Yuanda Investment Group Co., Lt. is the parent company of Taizhou Yuanda Furniture Co., Ltd. and Taizhou Yuanda Travelling Articles Co., Ltd.

2. Taizhou Yuanda Furniture Co., Ltd. is a Chinese company organized under the laws of China, and as a limited company (Ltd.), is its own legal entity made up of one or more members, none of which are US citizens, and with its principal place of business located at: High-Tech Industrial Park, Taixing, Jiangsu, 225402, People's Republic of China.

3. Taizhou Yuanda Travelling Articles Co., Ltd., is a Chinese company organized under the laws of China, and as a limited company (Ltd.), is its own legal entity made up of one or more members, none of which are US citizens, and with its principal place of business located at High-Tech Industrial Park, Taixing, Jiangsu, 225402, People's Republic of China.

4. Z Outdoor is a limited liability company organized under the laws of Wisconsin, and with its principal place of business located at 1424 North High Point Road, Suite 202,

Middleton, Wisconsin 53562. Upon information and belief, Z Outdoor's members are United States, and not Chinese, citizens.

5. AFG is a limited liability company organized under the laws of Wisconsin, and with its registered agent office located at 6264 Nesbitt Road, Fitchburg, Wisconsin 53719. Upon information and belief, AFG's members are United States, and not Chinese, citizens.

6. Casual Products of America is a limited liability company organized under the laws of Wisconsin, and with its registered agent office located at 1424 North High Point Road, Suite 202, Middleton, Wisconsin 53562. Upon information and belief, AFG's members are United States, and not Chinese, citizens.

7. Don Corning is the Managing Member of Z Outdoor and AFG. Upon information and belief he resides and is domiciled at 5673 Point O Pines Rd., Manitowish Waters, Wisconsin 54545-6304.

8. Erin Corning is the President of Z Outdoor. Upon information and belief she resides and is domiciled at 5770 Longwood Ln., Fitchburg, WI 535711-7211.

9. Kendra Farley is the President of AFG. Upon information and belief she resides and is domiciled at 6 Payson Ct., Madison, Wisconsin 53719-4719.

10. Pete Hill is the part owner of Z Outdoor and AFG. Upon information and belief he resides and is domiciled at 1329 Broadway Drive, Sun Prairie, Wisconsin 53590.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

12. There is a case of actual controversy between the parties in which the matter in dispute exceeds the sum or value of $75,000, exclusive of interest and costs.

13. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391.

14.     A substantial part of the events or omissions giving rise to TZY's claims occurred within this judicial district with respect to this civil action.

GENERAL ALLEGATIONS

15.     TZY is a manufacturer that at relevant times was, and is, interested in growing its distribution network and business. Defendants were interested in building a business as one of Defendants' distributors and desired capital investment to help defray costs.

*The Parties' Initial Discussions*

16.     In March 2016, TZY contacted a business associate of Mr. Corning and Mr. Hill and scheduled a time to meet in person to discuss potential business opportunities.  Mr. Corning and his team are well-known amongst the community of manufacturers of outdoor living products in China due to his management of a prior distributor, Home Casual, LLC.

17.     In March 2016, TZY met with Mr. Corning's associate at a hotel in Shanghai.  TZY discussed the capabilities of its network of factories and indicated that they were interested in exploring a business relationship with Mr. Hill and Mr. Corning.  Mr. Corning's associate indicated that he would discuss the matter with Mr. Corning and the parties scheduled a further meeting.

18.     The next meeting took place in the Holiday Inn Hotel in Chicago, Illinois.  TZY's management flew to Chicago in September 2016 to attend the Casual Market Conference held annually at the Mercantile Exchange in Chicago, to explore establishing U.S.-based operations, and to explore business opportunities with Mr. Corning and his team.

19.     While in Chicago, TZY scheduled a number of meetings with potential sales and design employees for a prospective U.S. business.  TZY also met with Mr. Corning and a number of his business colleagues.

20.     During the September 2016 meeting with Mr. Corning and his team, Mr. Corning gave TZY a number of documents highlighting the accomplishments of his business.  Mr. Corning also explained the benefits of doing business with Mr. Corning and Mr. Hill.  Mr. Corning highlighted the many brands and companies with which Mr. Corning had strong relationships that could secure future sales.  Mr. Corning also discouraged TZY from establishing U.S. operations, explaining to TZY that the potential success of such an operation was low.  According to Mr. Corning, however, partnering with Mr. Corning and Mr. Hill could be a lucrative alternative in light of their strong relationships and industry experience.

21.     Encouraged by Mr. Corning's statements, TZY invited Mr. Corning to visit TZY's factories in Jiangsu in the People's Republic of China.  Mr. Corning and a number of Mr. Corning's colleagues travelled to TZY's factories in late October 2016.

22.     While there, Mr. Corning and his colleagues spent three days touring TZY's factories and discussing the terms of a potential business deal.

23.     During the meetings in Jiangsu, Mr. Corning again indicated that he believed he could secure millions of dollars in sales to large home improvement stores and other retailers.  Mr. Corning also suggested that TZY and Mr. Corning each contribute money to a combined U.S. venture.  The parties also discussed the other terms of a potential agreement.

24.     After Mr. Corning and his colleagues left China, they and TZY continued to negotiate the terms of the deal.  Mr. Corning prepared a potential written agreement, and the parties traded edits over email.

***The Cooperation Agreement***

25.     The negotiations culminated in a deal.  On January 1, 2017, TZY and Mr. Corning on behalf of Z Outdoor entered into a Cooperation Agreement (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit "A".

26.     The Agreement provided for the creation of a relationship between TZY, CPA, and Z Outdoor whereby the parties expressed a desire to manufacture and market outdoor furniture and other related items.

27.     Beginning in January 2017, and for twenty-four (24) months thereafter, TZY agreed to loan Z Outdoor $150,000 per month (or $3.6 million in total) for Z Outdoor's operational expenses, and such loaned funds would be kept on Z Outdoor's books as a loan.

28.     The Agreement set forth certain targeted sales goals for Z Outdoor to meet. The agreed targets were $8 million in sales volume for 2017/2018, $20 million for 2018/2019, and $45 million for 2019/2020.

29.     In the event the targeted sales goals were met by December 31, 2018, TZY's loan would convert to a 50% equity ownership in Z Outdoor, provided upon the cooperation period set forth within the Agreement, a positive relationship between the parties, and Z Outdoor's financial performance. These factors were subject to TZY's discretion.

30.     In the event the targeted sales goals were not met, Z Outdoor agreed to repay the loan to TZY.

31.     Pursuant to the Agreement, Z Outdoor would be the vendor to customers and would receive purchase orders for products ordered from customers. Z Outdoor would submit the purchase orders from the customers to TZY.  Z Outdoor was provided certain margins on distinct types of marketed sales. A sample Purchase Order is attached hereto as Exhibit "B".

32.     Pursuant to the Agreement, TZY agreed to manufacture outdoor furniture and related products to be marketed by Z Outdoor to their customers. The Defendants agreed to pay TZY all outstanding invoices at established percentages within 10 days of Defendants receiving payment from customers. A sample Invoice is attached hereto as Exhibit "C".

33.     Z Outdoor agreed to clarify all payment terms in an official purchase order to TZY and further agreed to pay TZY on the price detailed on each TZY outstanding invoice.

34.     Section 1.B. of the Agreement further indicates CPA agreed to "set up" Z Outdoor, that CPA would own 100% of Z Outdoor, and that CPA would "manage and operate [Z Outdoor's] affairs subject to the provisions of this agreement."

***The Parties' Relationship Deteriorates as TZY's Requests for Payment Are Met with Excuses and Misstatements***

35.     After entering into the Agreement, Z Outdoor made a number of sales to home improvement stores and retailers.  Z Outdoor submitted purchase orders, and TZY filled those orders.

36.     Despite a healthy dose of customer orders and TZY deliveries, however, Defendants' payments for the merchandise soon slowed.

37.     TZY repeatedly requested payment for the merchandise.  TZY needed to secure materials from its suppliers to fill future orders.  The Defendants made excuses rather than payments, blaming late shipments and quality issues for the late payments.

38.     In addition—to keep their scheme going—the Defendants made a series of false statements about future business, forthcoming payments, and other causes for the delays, ensuring that TZY would continue to make loan payments to Z Outdoor and procure materials, manufacture the furniture, and fill customer orders even without receiving compensation for their goods.

39.     Specifically, amongst myriad other false statements:

    (a)     In an August 2, 2018 email to TZY management, Mr. Corning stated that they had a commitment for a payment from one of the customers and "should get payment early next week and will forward immediately."

    (b)     In an August 15, 2018 email to TZY management, Mr. Corning assured TZY that "[w]e are working very hard to get the payments we take this seriously…Regarding cooperation, we are moving over $30,000,000 of

business to TZY this year and are investing every day to aggressively increase this business to over $60,000,000 in the next 2 years."

(c)    In an August 21, 2018 email to TZY management, Mr. Corning stated that "our team is fully committed to resolving the payment issue…This has our full attention and we will get it resolved."

(d)    In an August 21, 2018 email to TZY management, Mr. Corning stated that "[i]t is clear to us that these delayed payments are impacting TZY's ability to make payments. These funds are critical to all of us. We realize it and we are solving the issues."

(e)    In a November 7, 2018 email to TZY employees and management, Mr. Corning stated that "We have had over 20 different bank meetings so Z can get a 'loan' or 'line of credit.' We are making progress. Our thought, once we get the loan, is to make payment to TZY and then we will deal with the 'stack chair' issue ourselves so we can all focus on building the business and not on the negative of this issue. Additionally, I own some property that I purchased many years ago. I am trying to sell it even though I don't want to, and if successful we will use those funds to make this problem go away. I have no doubt TZY will be paid. I'm sure Peter has told you the same. If not soon enough through Menards then either the loan or the property will solve this."

(f)    In a December 7, 2018 email to TZY employees and management regarding delayed payments due to TZY, Ms. Corning stated "[I am] [n]ot sure what I can do. Checks are being sent directly to the bank and money is being sent from the bank to TZY for TZY cost and freight."

(g)    In a December 29, 2018 email to TZY employees and management, Ms. Corning stated that "[m]y understanding is that Don is working on payment. We have set up the account as you asked so that the payments are automatically split."

(h)    In a January 10, 2019 email to TZY management, Mr. Corning stated that for some of the outstanding payments due to TZY, Z Outdoor would be paid "$350k in April, and then $350k in May, and $350k in June, with the balance by August 15, 2019."

(i)    In a February 20, 2019 email to TZY employees and management, Ms. Corning stated "[r]egarding payment, banks were closed yesterday in the U.S.A. but I think there is a large check today. This should continue as we are working daily [to resolve the issue]."

40.    On or about October 17, 2018, moreover, Defendants expanded their scheme to include another one of Defendant's business, AFG. Though it was not a party to the Agreement,

Mr. Hill explained that to increase their business with Menards, AFG would also submit purchase orders to TZY.

41.    Like Z Outdoor, AFG obtained purchase orders from customers and then submitted those purchase orders to TZY, an example of which is attached hereto as EXHIBIT "D".   TZY filled the orders and shipped the products to the end customers.  TZY then sent AFG invoices for the products that had been ordered, an example of which is attached hereto as EXHIBIT "E".  Shortly after submitting its purchase orders, AFG soon became delinquent, and TZY demanded payment.  AFG's President Ms. Farley, along with Mr. Hill, made a number of false statements to again deceive TZY.  Specifically, in addition to other false statements:

(a)    In a November 26, 2018 email to TZY employees and management, Ms. Farley stated that "[i]f there is NO other option to use the fabric, then yes, I will agree to pay for the extra yardage to not further delay the orders."

(b)    In a November 28, 2018 email to TZY employees and management, Ms. Farley stated that "I understand the payment issue.   It's an issue that has absolutely nothing to do with me or my program.  However, I'm aware that Don and Pete are working hard to get it resolved and are close to doing so."

(c)    In a November 29, 2018 email to TZY employees and management, Ms. Farley stated that Mr. Hill "has set up an account that will automatically wire TZY payment."

(d)    In a July 13, 2019 email to TZY employees and management, Mr. Hill stated that "[t]here are many 'payment refusals' due to documentation discrepancies that we are working through."

(e)    In a July 24, 2019 email to TZY employees and management, Mr. Hill stated "we have not received a check for AFG during this time period.  I was told by [the customer] that there is a large quality deduction holding up sending a check to us."

(f)    In an August 12, 2019 email to TZY employees and management, Ms. Farley stated that "[w]e have solve [sic] the bank account issue.  An account has already been set up with the bank and payments will [be] remitted directly to the bank."

(g)    In a August 14, 2019 email to TZY employees and management, Mr. Hill stated that "[w]e have a major defective issue at all customers.  There are

substantial chargebacks for defectives, fines, and penalties.  This is causing payments from customers to be dramatically reduced or withheld all together."

42.     In sum, Defendants ordered the product, received the product, re-sold the product, and have been paid for the product by their customers. Defendants have chosen to keep the money for themselves and not pay TZY.  In total, the Defendants have defrauded TZY and refused to pay for approximately $14 million of goods purchased and delivered to customers from 2017 to 2019.

43.     Adding insult to injury, Z Outdoor failed to meet sales goals specified for in the Agreement, but has nevertheless refused to repay the $2.85 million in loan payments made to Z Outdoor by TZY.

44.     Defendants purport to withhold what is owed to TZY on the basis of alleged penalties incurred from customers, representing but a small fraction of the overall cost of what Defendants owe to TZY, and devoid of a legitimate basis to withhold the entire amount.

45.     In an attempt to amicably resolve their differences without resorting to the courts, the parties met in Chicago in September 2019.  Again, Mr. Corning attempted to deflect from the Defendants' breaches and fraud with additional promises of repayment and future sales.  TZY demanded repayment but Mr. Corning declined.

46.     TZY was left with no other alternative and now seeks this Court's intervention to put an end to the Defendants' artifice to defraud TZY of millions of dollars of its sales.

## COUNT I
### (BREACH OF CONTRACT FOR UNPAID INVOICES AND/OR UNCOMPENSATED DELIVERED PRODUCT AGAINST DEFENDANTS Z OUTDOOR AND CPA)

47.     TZY incorporates by reference the allegations contained in paragraphs 1 through 46 of this Complaint as if they are fully set forth herein.

48.     TZY has performed all of its obligations under the Cooperation Agreement.

49.     Through their course of conduct, Defendants Z Outdoor and CPA have breached their obligations under the Cooperation Agreement and in connection with Z Outdoor's purchase orders and TZY's related invoices.

50.     Defendant Z Outdoor, for example, breached their agreements with TZY by failing to pay TZY approximately $3.37 million in unpaid invoices (reflecting products that Z Outdoor ordered, received, re-sold, and for which, upon information and belief, Z Outdoor has already received payment) for 2018.

51.     Defendant Z Outdoor also breached its agreements with TZY by failing to pay TZY approximately $5.86 million in unpaid invoices (reflecting products that Defendant Z Outdoor ordered, received, re-sold, and for which, upon information and belief, Z Outdoor has already received payment) for the period of January 1, 2019 through July 15, 2019.

52.     Defendant CPA breached Section 1.B. of the Cooperation Agreement because by failing to cause Z Outdoor to pay TZY, CPA failed to "manage and operate [Z Outdoor's] affairs" consistent with the terms of the Agreement.

53.     As a direct, foreseeable, and proximate result of Defendants' breaches, TZY has suffered damages including, but not limited to, damages for lost profits, liabilities resulting from Defendants' breach of their contractual duties, attorney's fees and costs of this suit, pre- and post-judgment interest, and other special damages amounts that will be established at trial.

54.     All conditions precedent to the bringing of this claim have been performed, have occurred, or have been waived.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants Z Outdoor and CPA, on Count I of its Complaint as follows: (i) judgment against Defendants Z Outdoor and CPA, for the amount Defendants Z Outdoor and CPA owe TZY,

approximately $9.23 million, plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT II
### (BREACH OF CONTRACT FOR UNPAID INVOICES AND/OR UNCOMPENSATED DELIVERED PRODUCT AGAINST DEFENDANT AFG)

55.     TZY incorporates by reference the allegations contained in paragraphs 1 through 54 of this Complaint as if they are fully set forth herein.

56.     Through its course of conduct, Defendant AFG has breached its obligations pursuant to its purchase orders to TZY and TZY's related invoices.

57.     TZY has performed all of its obligations pursuant to the purchase orders and related invoices.

58.     Defendant AFG breached its agreements with TZY by failing to pay TZY approximately $7.38 million for products that AFG ordered, received, re-sold, and for which, upon information and belief, AFG has already received payment for the period of January 1, 2019 through July 15, 2019.

59.     As a direct, foreseeable, and proximate result of Defendants' breaches, TZY has suffered damages including, but not limited to, damages for lost profits, liabilities resulting from Defendants' breach of their contractual duties, attorney's fees and costs of this suit, pre- and post-judgment interest, and other special damages amounts that will be established at trial.

60.     All conditions precedent to the bringing of this claim have been performed, have occurred, or have been waived.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendant AFG on Count II of its Complaint as follows: (i) judgment against Defendant AFG, for the amount Defendant AFG owes TZY, approximately $7.38 million, plus its

costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT III
### (BREACH OF COOPERATION AGREEMENT AGAINST Z OUTDOOR AND CASUAL PRODUCTS OF AMERICA)

61.     TZY incorporates by reference the allegations contained in paragraphs 1 through 60 of this Complaint as if they are fully set forth herein.

62.     TZY has performed all of its obligations under the Agreement, including providing the loan at issue to Z Outdoor.

63.     Through its course of conduct, Z Outdoor breached its Cooperation Agreement with TZY by failing to repay $2.85 million on the loan extended to Z Outdoor by TZY.

64.     Defendant CPA breached Section 1.B. of the Cooperation Agreement because by failing to cause Z Outdoor to repay the loan, CPA failed to "manage and operate [Z Outdoor's] affairs" consistent with the terms of the Agreement.

65.     As a direct, foreseeable, and proximate result of Z Outdoor's and CPA's breaches of the Agreement, TZY has suffered damages including, but not limited to, damages for lost profits, liabilities resulting from Z Outdoor's and CPA's breaches of their contractual duties, attorney's fees and costs of this suit, pre- and post-judgment interest, and other special damages amounts that will be established at trial.

66.     All conditions precedent to the bringing of this claim have been performed, have occurred, or have been waived.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants Z Outdoor and CPA, on Count III of its Complaint as follows: (i) judgment against Defendants Z Outdoor and CPA, for the $2.85 million Z Outdoor and CPA owes TZY,

plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT IV
### (UNJUST ENRICHMENT AGAINST DEFENDANTS Z OUTDOOR, AFG, AND CASUAL PRODUCTS OF AMERICA)

67.     TZY incorporates by reference the allegations contained in paragraphs 1 through 66 of this Complaint as if they are fully set forth herein.

68.     This count is asserted in the alternative, to the extent Defendants Z Outdoor, AFG, and/or CPA argue that the actions at issue in this case were not governed by a contract and/or are somehow not subject to a breach of contract claim.

69.     TZY provided the loan, products, resulting invoices stemming from products provided, and additional shipped product that is the subject of this Complaint, to Defendants at Defendants' request.

70.     Defendants have refused to pay TZY for the loss sustained and further caused TZY to incur additional expenses under circumstances where the retention of such money and refusal to reimburse TZY would be inequitable and unjust.

71.     Defendants should be required to make restitution of such amounts to TZY and to pay all other damages and disgorge all other benefits received as a result of its wrongful acts.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants Z Outdoor, AFG, and CPA, on Count IV of its Complaint as follows: (i) judgment against Defendants, for the amount Defendants owe TZY, approximately $19 million, plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT V
### (FRAUD IN THE INDUCEMENT AGAINST MR. CORNING)

14

72.   TZY incorporates by reference the allegations contained in paragraphs 1 through 71 of this Complaint as if they are fully set forth herein.

73.   Mr. Corning made a number of untrue statements of material fact.  Specifically, in addition to other false statements, during his September 2016 meeting with TZY management at the Holiday Inn in Chicago, Illinois, Mr. Corning represented that his strong relationships with a number of brands and companies could secure future sales for TZY, that a business relationship between TZY and Mr. Corning would be profitable for TZY, and that the potential success of a potential TZY U.S.-based operation would be low.

74.   Mr. Corning made these statements knowing that they were untrue and with the intent to deceive TZY.  Indeed, Mr. Corning made these statements knowing that neither Mr. Corning nor any of his businesses would repay TZY for the materials procured by TZY or the full value of goods delivered to customers.

75.   Mr. Corning made these statements with the intent to induce TZY to enter into a business relationship (the Cooperation Agreement), to induce TZY to commit money to Z Outdoor (the loan), and to convince TZY not to proceed with establishing its own U.S. operations.

76.   TZY believed Mr. Corning's statements were true and relied on them.

77.   As a direct result of Mr. Corning's fraudulent conduct, TZY entered into the Agreement with Z Outdoor, loaned money to Z Outdoor, and abandoned its plan to launch U.S. operations.   Consequently, TZY has incurred significant damages, including approximately $19 million due in loan payments and for unpaid merchandise.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendant Mr. Corning, on Count V of its Complaint as follows: (i) judgment against Mr. Corning, for the damages resulting from Mr. Corning's fraud, including, but not limited to, sums for materials expended to obtain materials and produce furniture for which TZY was never

reimbursed, plus its costs and attorney's fees associated with bringing this action; and (ii) granting

TZY all other just and proper relief.

## <u>COUNT VI</u>
### (COMMON LAW FRAUD AGAINST MR. CORNING, MS. CORNING, AND Z OUTDOOR)

78.     TZY incorporates by reference the allegations contained in paragraphs 1 through

77 of this Complaint as if they are fully set forth herein.

79.     Mr. Corning and Ms. Corning made a number of untrue statements of material fact.

Specifically, amongst myriad other false statements:

   (a)    In an August 2, 2018 email to TZY management, Mr. Corning stated that they had a commitment for a payment from one of the customers and "should get payment early next week and will forward immediately."

   (b)    In an August 15, 2018 email to TZY management, Mr. Corning assured TZY that "[w]e are working very hard to get the payments we take this seriously…Regarding cooperation, we are moving over $30,000,000 of business to TZY this year and are investing every day to aggressively increase this business to over $60,000,000 in the next 2 years."

   (c)    In an August 21, 2018 email to TZY management, Mr. Corning stated that "our team is fully committed to resolving the payment issue…This has our full attention and we will get it resolved."

   (d)    In an August 21, 2018 email to TZY management, Mr. Corning stated that "[i]t is clear to us that these delayed payments are impacting TZY's ability to make payments.  These funds are critical to all of us.  We realize it and we are solving the issues."

   (e)    In a November 7, 2018 email to TZY employees and management, Mr. Corning stated that "We have had over 20 different bank meetings so Z can get a 'loan' or 'line of credit.'  We are making progress.  Our thought, once we get the loan, is to make payment to TZY and then we will deal with the 'stack chair' issue ourselves so we can all focus on building the business and not on the negative of this issue.  Additionally, I own some property that I purchased many years ago.  I am trying to sell it even though I don't want to, and if successful we will use those funds to make this problem go away.  I have no doubt TZY will be paid.  I'm sure Peter has told you the same.  If not soon enough through Menards then either the loan or the property will solve this."

(f)     In a December 7, 2018 email to TZY employees and management regarding delayed payments due to TZY, Ms. Corning stated "[I am] [n]ot sure what I can do.  Checks are being sent directly to the bank and money is being sent from the bank to TZY for TZY cost and freight."

(g)     In a December 29, 2018 email to TZY employees and management, Ms. Corning stated that "[m]y understanding is that Don is working on payment. We have set up the account as you asked so that the payments are automatically split."

(h)     In a January 10, 2019 email to TZY management, Mr. Corning stated that for some of the outstanding payments due to TZY, Z Outdoor would be paid "$350k in April, and then $350k in May, and $350k in June, with the balance by August 15, 2019."

(i)     In a February 20, 2019 email to TZY employees and management, Ms. Corning stated "[r]egarding payment, banks were closed yesterday in the U.S.A. but I think there is a large check today.  This should continue as we are working daily [to resolve the issue]."

80.     Mr. Corning and Ms. Corning made these statements knowing that they were untrue and with the intent to deceive TZY.  Indeed, Mr. Corning and Ms. Corning made these statements knowing that neither Mr. Corning, nor Ms. Corning, nor Z Outdoor would repay TZY for the full value of goods delivered to customers—instead keeping the customers' payments for themselves.

81.     TZY believed Mr. Corning's and Ms. Corning's statements were true and relied on them.

82.     As a direct result of Mr. Corning's and Ms. Corning's fraudulent conduct, TZY continued to obtain materials from suppliers, manufacture products, and deliver the products to customers.  Consequently, TZY has incurred significant damages, including approximately $9.23 million for unpaid merchandise.

WHEREFORE**,** TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants Mr. Corning, Ms. Corning, and Z Outdoor, on Count VI of its Complaint as follows: (i) judgment against Defendants Mr. Corning, Ms. Corning, and Z Outdoor, for the damages resulting from Mr. Corning's, Ms. Corning's, and Z Outdoor's fraud, including sums

expended to obtain materials and produce furniture for which TZY was never reimbursed, plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT VII
### (COMMON LAW FRAUD AGAINST MR. HILL, MS. FARLEY, AND AFG)

83.     TZY incorporates by reference the allegations contained in paragraphs 1 through 82 of this Complaint as if they are fully set forth herein.

84.     AFG's President Ms. Farley, along with Mr. Hill, made a number of untrue statements of material fact.  Specifically, in addition to other false statements:

(a)     In a November 26, 2018 email to TZY employees and management, Ms. Farley stated that "[i]f there is NO other option to use the fabric, then yes, I will agree to pay for the extra yardage to not further delay the orders."

(b)     In a November 28, 2018 email to TZY employees and management, Ms. Farley stated that "I understand the payment issue.  It's an issue that has absolutely nothing to do with me or my program.  However, I'm aware that Don and Pete are working hard to get it resolved and are close to doing so."

(c)     In a November 29, 2018 email to TZY employees and management, Ms. Farley stated that Mr. Hill "has set up an account that will automatically wire TZY payment."

(d)     In a July 13, 2019 email to TZY employees and management, Mr. Hill stated that "[t]here are many 'payment refusals' due to documentation discrepancies that we are working through."

(e)     In a July 24, 2019 email to TZY employees and management, Mr. Hill stated "we have not received a check for AFG during this time period.  I was told by [the customer] that there is a large quality deduction holding up sending a check to us."

(f)     In an August 12, 2019 email to TZY employees and management, Ms. Farley stated that "[w]e have solve [*sic*] the bank account issue.  An account has already been set up with the bank and payments will [be] remitted directly to the bank."

(g)     In an August 14, 2019 email to TZY employees and management, Mr. Hill stated that "[w]e have a major defective issue at all customers.  There are substantial chargebacks for defectives, fines, and penalties.  This is causing

payments from customers to be dramatically reduced or withheld all together."

85.     Mr. Hill and Ms. Farley made these statements knowing that they were untrue and with the intent to deceive TZY.  Indeed, Mr. Hill and Ms. Farley made these statements knowing that neither Mr. Hill, nor Ms. Farley, nor AFG would repay TZY for the full value of goods delivered to customers—instead keeping the customers' payments for themselves.

86.     Mr. Hill and Ms. Farley made these statements with the intent to induce TZY to continue obtaining supplies, manufacturing products, and shipping merchandise to customers for which AFG had no intent to repay TYZ.

87.     TZY believed Mr. Hill's and Ms. Farley's statements were true and relied on them.

88.     As a direct result of Mr. Hill's and Ms. Farley's fraudulent conduct, TZY continued to obtain materials from suppliers, manufacture products, and deliver the products to customers. Consequently, TZY has incurred significant damages, including approximately $7.38 million for unpaid merchandise.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants Mr. Hill, Ms. Farley, and AFG, on Count VII of its Complaint as follows: (i) judgment against Defendants Mr. Hill, Ms. Farley, and AFG, for the damages resulting from Mr. Hill's, Ms. Farley's, and AFG's fraud, including, including sums expended to obtain materials and produce furniture for which TZY was never reimbursed, plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

## COUNT VIII
### (CONVERSION AGAINST ALL DEFENDANTS)

89.     TZY incorporates by reference the allegations contained in paragraphs 1 through 88 of this Complaint as if they are fully set forth herein.

90.     Defendants wrongfully assumed and retain control over approximately $16.61 million paid by customers for products manufactured and delivered by TZY.  Likewise, under the terms of the Agreement, Z Outdoor is obligated to promptly repay the sums loaned to Z Outdoor by TZY.  These funds—both the sums remitted by customers and the loan proceeds—rightly belong to TZY, not to the Defendants.

91.     Defendants have acted without TZY's consent in retaining these funds.  Indeed, TZY has repeatedly demanded that Defendants wire them the payments due and owing to TZY. Defendants have repeatedly refused to do so.

92.     Defendants' willful misconduct seriously interfered with TZY's right to possess the funds.

WHEREFORE, TZY respectfully requests that the Court enter judgment in favor of TZY and against Defendants, on Count VIII of its Complaint as follows: (i) judgment against Defendants, for the amounts Defendants owe to TZY, approximately $19 million, plus its costs and attorney's fees associated with bringing this action; and (ii) granting TZY all other just and proper relief.

### PRAYER FOR RELIEF

WHEREFORE, TZY respectfully requests that this Court enter the following relief in its favor:

A.     An order awarding TZY its damages, including compensatory, exemplary, and special damages, as well as its prejudgment and post judgment interest;

B.     An order awarding TZY its costs and attorney's fees in enforcing these breach of contract and breach of cooperation agreement claims, or alternatively, unjust enrichment claims; and

C.     Provide for any other and further relief that is just and proper.

Dated:  October 24, 2019.

Respectfully submitted,

*s/ Mark W. Hancock*
Jonathan T. Smies
Mark W. Hancock
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone:  608-257-3911
Fax:  608-257-0609
jsmies@gklaw.com
mhancock@gklaw.com

*Attorneys for Plaintiffs*

21384278.1