UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**TAIZHOU YUANDA INVESTMENT GROUP CO., LTD., TAIZHOU YUANDA FURNITURE CO., LTD.,** and **TAIZHOU YUANDA TRAVELLING ARTICLES CO., LTC.**

Plaintiffs,

Case No. 19-cv-875-jdp

v.

**Z OUTDOOR LIVING, LLC. AFG, LLC, CASUAL PRODUCTS OF AMERICA, LLC., DON CORNING, ERIN CORNING, KENDRA FARLEY, AND PETE HILL**

Defendants.

---

### DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

---

Plaintiffs have filed a motion to compel against Outdoor By Design, LLC. ("OBD") Outdoor By Design has never been a party to this litigation, and the undersigned counsel is not representing OBD in this case or on this motion. Counsel does continue to represent all Defendants in this matter (pending the Court's decision on the motion to withdraw from representing the non-dismissed Defendants), and responds on their behalf to the motion to compel.

Although the motion to compel is directed at OBD, Plaintiffs' motion argues some of the same collective arguments against all Defendants about a fraudulent scheme that this Court has twice rejected. Plaintiffs have also threatened Don Corning directly with respect to the discovery sought from OBD, suggesting that Plaintiffs would pursue sanctions again Mr. Corning if he did not comply with the OBD subpoena. For that reason, Defendants respond so that there is no doubt

1

that Defendants have complied with all their obligations with respect to discovery and should in no way be held responsible to continue to respond to discovery directed at OBD.

It is not clear that Plaintiffs' motion to compel is properly grounded under the law, because it seeks to compel production of documents and discovery of a third-party and not a party to this action. *See* 7 **Moore's Federal Practice** § 37.40 (3d ed. 1997) ("[O]nly Rule 37(b)(1), governing a deponent's failure to be sworn or to answer a question after being directed to do so by the court, applies to nonparties. Rule 37(b)(2), governing all other failures to obey discovery orders, does not apply to nonparties."); *see also Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) (collecting cases and concluding that "Rule 37(b)(1) provides the appropriate means to sanction a nonparty" and "[t]he only sanction available under Rule 37(b)(1) is to hold a deponent in contempt of court."). To the extent that Plaintiffs' motion is grounded in contempt, it is difficult to determine how a company without any remaining agents can be in contempt. All the Defendants from the current case who had an ownership interest in OBD have withdrawn completely from OBD. Plaintiffs have not indicated that they have contacted (let alone served) anyone who still has authority to act on behalf of OBD and respond to the discovery requests. Moreover, Defendants in this case do not have OBD's documents, nor were they actively involved in the daily business operations of the company.

OBD is a defunct company that filed for Chapter 11 bankruptcy protection in Florida in June of 2020 and had all of its assets liquidated by secured creditors. This liquidation resulted in the bankruptcy being dismissed in December of 2020 because the company had no ability to emerge from bankruptcy. (All this information is derived from the public filings on PACER for US Bankruptcy Court, Middle District of Florida Case #BK4253-CED).

Now that OBD is completely shut down and there are no active employees or members, Plaintiffs are gung-ho on complaining that they have not received adequate discovery responses pursuant to a third-party subpoena purportedly served between January 8-13, 2021. Plaintiffs' motion makes it sound as if they have been stonewalled at every turn in this case at their attempt to obtain information from OBD, and that they need this information in order to investigate their claims against the remaining Defendants in this case. That assertion is not accurate. Plaintiffs have received substantial discovery in this case on all the financial issues surrounding the Defendants, including documents and questions relating to funds ultimately loaned to OBD. Moreover, Plaintiffs had the opportunity to follow up previously on all of those discovery requests, including by subpoenaing information directly from OBD. Instead, Plaintiffs waited until days before OBD's bankruptcy was dismissed, the company was out of business and no one was left to provide documents. Even so, the undersigned counsel voluntarily provided bank information to Plaintiffs' counsel that led to Plaintiffs successfully subpoenaing over 1,500 pages of OBD bank statements and other financial information in late January.

Each of the Defendant in this case has been questioned at length in full-day depositions about all the claims and defenses in this case, as well as financial documents of all parties and multiple third parties including OBD. Don Corning in particular sat for a full-day deposition and was asked eighty four (84) questions about OBD, testifying that he was never active in the day-to-day operations of that business, did not receive any money from OBD and was merely a passive investor who lost substantial money, and who does not have any documents in his possession or control. Similarly, Pete Hill sat for two full-day depositions (including one as a 30(b)(6) designee for Defendants) and testified that he also was not active in the day-to-day operations of OBD, lacked documents, and did not receive compensation from OBD.

Furthermore, the Defendants have provided well over 100,000 pages of documents in response to discovery in this case. (Declaration of Kevin J. Palmersheim in Response to Plaintiffs' Motion to Compel Directed at Outdoor By Design, LLC ¶5) (hereinafter, "Palmersheim Dec."). Third parties have also provided responsive discovery documents to the Plaintiffs. These documents include the following representative categories:

- Plaintiffs served a subpoena on Johnson Financial Group on March 16, 2020, for Defendants' financial information. These documents were provided on or around April 3, 2020.

- Plaintiffs served subpoenas on various entities on or about March 27, 2020, with a response to those subpoenas delivered on or about May 4, 2020. These responses include not only a response by Outdoor By Design, which was still in business as of that date, but also Alliant Furniture Group, LLC; AMG International, LLC; B-Cool Technologies, LLC; Outdoor Brands International, LLC; and Outdoor Innovations Group, LLC.

- Plaintiffs issued a second subpoena on Johnson Financial Group on or about May 11, 2020, and received responsive documents on or about June 23, 2020. This information included the personal financial documents for Don Corning, Erin Corning, Kendra Farley and Pete Hill.

- On or about May 11, 2020, Plaintiffs served Oak Financial, Inc. with a subpoena, and received responsive documents on or about June 23, 2020. These responsive documents included personal bank records for Don Corning, Lois Corning, Ashley Corning, Erin Corning, Kendra Farley and Jason Farley.

- Defendants Z Outdoor, AFG and Casual Products of America responded to requests for production of documents on or about June 2, 2020, which included old tax returns and other financial documents.

- Defendants provided to Plaintiffs on or about October 15, 2020, with a complete electronic QuickBooks file for Defendants Z Outdoor and AFG.

- After the Court granted Plaintiffs' motion for leave to add AMG, LLC and Outdoor Brands International, LLC as Defendants in this case, those Defendants provided on or about November 12, 2020, their financial statements.

- On or about January 6, 2021, Plaintiffs served a subpoena on First Midwest Bank seeking documents related to OBD's bank records and other financial information. The return date for that subpoena was January 22, 2021, and Defendants' counsel has not seen any documents regarding that request.

- Similarly, Defendants' counsel voluntarily provided Plaintiffs' counsel on January 13, 2021, with another name of a bank and account number for OBD that was referenced in the Defendant's bank records that had already been produced to Plaintiffs. Within hours the Plaintiffs had prepared a subpoena and served it on Regions Bank seeking OBD's bank records. Regions Bank provided over 1,500 pages of bank statements and other financial information for OBD. (Palmersheim Dec., ¶5).

After receiving the bulk of the above financial information, including all information necessary to track whether that money went into any of Defendants' bank accounts, Plaintiffs had the opportunity to depose the Defendants. Each of the individual Defendants was deposed for a full day, with Pete Hill sitting for two full days. Plaintiffs asked each of the witnesses questions about all the Defendant entities, as well as OBD. For example, questions to Don Corning included the following:

**Don Corning Deposition**

> **Q:** Prior to working -- prior to January 2017 what -- what, if anything, had you done to help or invest in OBD other than -- than try to help them sell into certain retailers?
> **A:** I hadn't done anything. (Dkt. #79, Deposition of Donald D. Corning, 80:2-7).

> **Q:** Okay. So prior to January 1st, 2017, your only role with respect to OBD would have been to help them sell to Menards; is that right?
> **A:** Prior -- well, the only other thing I did is I looked at their product line and suggested that they could expand their product line by having offshore components brought in, okay? They could expand their product line by introducing all-weather wicker and other products, you know, but I didn't have any day-to-day responsibilities or involvement with OBD. (Dkt. #79, Deposition of Donald D. Corning, 80:8-18).

> **Q:** Okay. Do you know if OBI ever gave money to OBD?
> **A:** We -- we -- I don't know which entity, but we -- we loaned money to OBD over the years and quite a bit over the years. We loaned them money when -- when there was a need.
> **Q:** Okay. Do you remember when that need was?
> **A:** I don't remember those specifics at all. (Dkt. #79, Deposition of Donald D. Corning, 81:9-17)

> Q: 81:24-82:1 Are you involved -- were you involved in the management of OBD prior to its bankruptcy?
> 82:2 A: I was not. (Dkt. #79, Deposition of Donald D. Corning, 81:24-82:2).
>
> Q: Did you ever receive financial statements about OBD?
> A: Me personally? No. …. (Dkt. #79, Deposition of Donald D. Corning, 82:3-5).
>
> Q: Prior to working -- prior to January 2017 what -- what, if anything, had you done to help or invest in OBD other than -- than try to help them sell into certain retailers?
> A: I hadn't done anything.  (Dkt. #79, Deposition of Donald D. Corning, 80:2-7).
>
> Q: Mr. Corning, have you received any salary from Outdoor by Design?
> A: No.
> Q: Have you received any payments from Outdoor by Design of any kind whatsoever?
> A: I have not.
> Q: Has anybody in your family received any payments from Outdoor by Design of any kind whatsoever?
> A: No, not to my knowledge. (Dkt. #79, Deposition of Donald D. Corning, 164:12-21).

Similarly, the depositions of Pete Hill included the following questions and answers:

**Pete Hill Deposition**

> Q: Who else did [OBD] sell to besides Menards, Carl's Leisure, and Pool & Patio?
> A: Park & Pool was a large customer. Again, I'm not involved in the detailed operation of Outdoor By Design. (Dkt. #83, Deposition of Peter Hill, 329:22-330:2).
>
> Q: … By the way, have you ever received any distributions from Outdoor By Design?
> A: The only distribution paid was a Wisconsin non-resident tax requirement that had to be done every -- because some of our shareholders were non-residents.
> Q: Have you ever received any compensation from any entity affiliated with the Cornings other than Z Outdoor since January 1st, 2017?
> A: No.
> Q: Have you ever received any distributions other than the tax distribution you just mentioned from any organization affiliated with the Cornings since January 1, 2017?
> A: No. (Dkt. #83, Deposition of Peter Hill, 468:12-469:-3).

Plaintiffs have failed to explain why they waited until after OBD was insolvent and defunct to follow up on discovery information from OBD, waiting from March 2020 until December 2020. That delay should not be held against the Defendants. Defendants have provided documents,

answered questions, and even voluntarily provided information so that Plaintiffs could subpoena third-party banks to obtain whatever financial information remained of the defunct OBD.

The court may ask why Defendants are responding at all to the Motion to Compel if it is directed at a third party. The reason is that Plaintiffs' counsel has continued to demand that individual Defendants in this case respond to his discovery inquiries for OBD, and he has further threatened Don Corning with sanctions if Mr. Corning does not comply. Although Don Corning continues to be represented, Plaintiffs' counsel sent Mr. Corning three emails between January 20-22, 2021, demanding that Mr. Corning provide information for OBD (these emails were copied to the undersigned counsel). Mr. Corning was not served with any of the subpoenas for OBD, and he is no longer a member or holds any other position with OBD. Yet, Plaintiffs' counsel directed Mr. Corning as follows:

> We have not received any documents. Please confirm asap they will be provided to us by tomorrow at the latest. Please be advised if we do not have the documents by tomorrow night, we will have no choice but to file a motion to compel with the court. In doing so, we reserve the right to seek an Order compelling reimbursement of TZY's costs in bringing that motion to compel .… Please also confirm that OBD will be appearing for its deposition on Monday pursuant to the second subpoena. (Palmersheim Dec., ¶4).

This Court has dismissed Plaintiffs' claims again the individual Defendants, and later rejected an attempt to drag them back in through an 80-plus page amended pleading. Defendants have sat for days in depositions, provided over 100,000 pages of documents in response to Plaintiffs' discovery requests, and have responded to repeated follow-up requests for additional information and documentation. At some point the harassment must end, particularly since discovery in this case closes today.

7

To the extent that Plaintiffs' motion to compel seeks relief in any manner against any of the Defendants in this case, Defendants oppose such relief as unauthorized by law, and affirmatively state that they have complied with all discovery requests to the best of their ability and provided all responsive information to the Plaintiffs that is in their possession and control.

Respectfully submitted this 1st day of February, 2021.

**PALMERSHEIM DETTMANN, S.C.**

/s/ Kevin J. Palmersheim
Kevin J. Palmersheim
Wisconsin State Bar #1020726
Erin E. Rome
Wisconsin State Bar #1083092
Attorneys for Defendants
1424 N. High Point Road, Ste. 202
P.O. Box 628005
Middleton, WI 53562-8005
(608) 836-6400