IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAIZHOU YUANDA INVESTMENT GROUP CO.,
LTD. and TAIZHOU YUANDA FURNITURE CO.,
LTD.,

                              Plaintiffs,

        v.                                                    OPINION and ORDER

Z OUTDOOR LIVING, LLC; AFG, LLC;                              19-cv-875-jdp
CASUAL PRODUCTS OF AMERICA, LLC;
AMG INTERNATIONAL, LLC; and
OUTDOOR BRANDS INTERNATIONAL, INC.,

                              Defendants.

---

This case involves a failed commercial relationship between two Chinese manufacturers of outdoor patio furniture—plaintiffs Taizhou Yuanda Furniture Co. and Taizhou Yuanda Investment Group Co.—and their American distributors—defendants Z Outdoor Living, LLC and AFG, LLC. As is often the case, the parties have very different views of why the relationship fell apart, with each side blaming the other.

Plaintiffs say that Z Outdoor and AFG stopped making timely payments for the furniture they ordered, misused loans provided by plaintiffs, lied to plaintiffs about their finances, and then stopped paying their debts altogether. Plaintiffs also accuse Z Outdoor and AFG of fraudulently transferring assets to defendants Outdoor Brands International, Inc. and AMG International, LLC, to avoid their obligations to plaintiffs, and of unjustly enriching defendant Casual Products of America, LLC by loaning that company money using plaintiffs'

funds. Plaintiffs assert claims for breach of contract, unjust enrichment, and violations of Wis. Stat. § 242.04, which prohibits fraudulent conveyances.[1]

For their part, Z Outdoor and AFG say that plaintiffs made defective furniture, failed to make timely deliveries, cut off loans that defendants needed for operating expenses, and failed to pay promised bonuses. As a result, Z Outdoor and AFG say that they lost all of their business and were forced to shut down. Z Outdoor and AFG assert counterclaims for breach of contract and breach of the duty of good faith and fair dealing.

Plaintiffs move for summary judgment on all of their contract claims as well as the counterclaims asserted by defendants. Dkt. 85. Neither side moves for summary judgment on plaintiffs' claims for fraudulent conveyances or unjust enrichment.

The court will grant plaintiffs' motion in most respects. Because Z Outdoor and AFG are the only defendants that are relevant to plaintiffs' summary judgment motion, the court will refer to these two parties as "defendants" for the remainder of the opinion. It's undisputed that defendants failed to pay plaintiffs nearly $15 million for furniture they ordered and that they failed to pay back nearly $3 million in loans. Defendants say that their actions are justified by various alleged breaches by plaintiffs, but defendants' arguments fail because they aren't supported by the law or admissible evidence. Defendants' counterclaims fail for many of the same reasons, with the exception of their counterclaim based on plaintiffs' failure to pay

---

[1] For reasons plaintiffs don't explain, their most recent complaint also includes claims for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), RICO's state-law counterpart, and state laws against misappropriation, theft, and breach of fiduciary duty and claims against Don Corning, Erin Corning, Kendra Farley, and Pete Hill, who are the owners and employees of the defendants. *See* Dkt. 68. The court denied plaintiffs' motion for leave to amend their complaint to add those claims and defendants, *see* Dkt. 65, so they should have been omitted from the amended complaint. To remove any doubt, the court reiterates that those claims and defendants are not part of the case.

bonuses required by the parties' agreement. Plaintiffs admit that they didn't pay those bonuses, and they have failed to explain why they shouldn't be required to do so.

Plaintiffs also move for a status conference. Dkt. 118. This is because defense counsel withdrew from the case after the parties finished briefing plaintiffs' summary judgment motion, *see* Dkt. 117, and new counsel has yet to make an appearance. Plaintiffs say that "a Status Conference is merited to allow the Court to address Defendants' lack of counsel in light of the looming pretrial deadlines, to avoid wasteful trial preparation, and to promote an efficient and effective trial of this case." *Id.* at 3.

Plaintiffs may be correct that a status conference would be useful. But, as the court pointed out when granting the motion to withdraw, business entities such as defendants can't appear in federal court without a lawyer. *See 1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015). Plaintiffs don't explain how the court can hold a status conference with parties who are unable to make an appearance. So instead of holding a status conference, the court will give defendants a deadline to file a notice of appearance from new counsel. If they fail to do so, plaintiffs may move for a default judgment under Federal Rule of Civil Procedure 55(a) for defendants' failure to prosecute and defend the remaining claims and counterclaims.

BACKGROUND

The court provides here a brief overview of some undisputed background facts to provide context for the dispute. Additional facts will be discussed as they become relevant to the analysis.

Plaintiffs are Chinese companies that manufacture and sell outdoor patio furniture. Taizhou Yuanda Investment Group is the parent company of Taizhou Yuanda Furniture. Plaintiffs shorten the phrase "Taizhou Yuanda" to "TZY" in their briefs, so the court will do the same.[2]

In 2016, TZY Furniture began negotiating with Don Corning to enter into a business relationship. Corning is the owner of Casual Products of America, which is the owner of both Z Outdoor and AFG.  Both Z Outdoor and AFG sell outdoor furniture. In early 2017, the parties entered into what they call the Cooperation Agreement, under which plaintiffs would manufacture outdoor furniture, and Z Outdoor would purchase the furniture and then re-sell it at a higher price to American retailers. Z Outdoor sent purchase orders to plaintiffs, which would make the furniture and issue invoices to Z Outdoor. The agreement also provided that TZY Furniture would give Z Outdoor monthly loans for operating expenses.

In fall 2017, Z Outdoor began making sales of plaintiffs' furniture to American retailers, including Menards. After Z Outdoor submitted purchase orders, defendants manufactured and shipped the furniture and sent invoices to Z Outdoor.

In 2018, Z Outdoor began receiving payments from retailers after they received the furniture. Under the agreement, Z Outdoor was required to pay TZY Furniture within 10 days "at the appropriate percentage for each market for factory items shipped." Dkt. 93-11, § 2.G. Defendants did not comply with this requirement, often sending payments well beyond the

---

[2] Plaintiffs often used the abbreviation "TZY" to refer to either of the two plaintiffs, without specifying which plaintiff they were referring to. They also sometimes used "TZY" to refer to plaintiffs collectively. This practiced confused some of the issues because each plaintiff raised separate claims. The court expects plaintiffs to be more precise with their terms.

due date and for far less than what was owed under the agreement. In August 2018, plaintiffs stopped sending loan payments to Z Outdoor.

Throughout 2018, Erin Corning and Kendra Farley (Don Corning's son and daughter) visited plaintiffs' factory to discuss "late shipments and quality issues." Dkt. 104, ¶ 88. Z Outdoor also sent emails to plaintiffs complaining about the same issues.

In October 2018, Z Outdoor informed plaintiffs that AFG would also be submitting purchase orders to plaintiffs. Z Outdoor did this because Menards "will only provide a certain amount of business to one company." Dkt. 104, ¶ 55.

Both Z Outdoor and AFG withheld full payments from plaintiffs throughout the first half of 2019. In June 2019, defendants stopped sending any payments to plaintiffs. In October 2019, plaintiffs filed this lawsuit.

Plaintiffs are citizens of China, defendants' members are citizens of Wisconsin, and the amount in controversy is more than $75,000, so the court may exercise jurisdiction under 28 U.S.C. § 1332.

ANALYSIS

A.  Plaintiffs' claims

Plaintiffs' contract claims are based on two types of alleged breaches: (1) failing to pay for furniture that defendants ordered and sold to American retailers; and (2) failing to repay loans. Plaintiffs also discuss other alleged breaches in their briefs, such as an alleged failure to use loans as directed and failing to keep accurate records. But plaintiffs didn't identify those alleged breaches as separate claims in their amended complaint, and plaintiffs don't contend

that they suffered damages from those breaches. So the court understands plaintiffs to be raising those breaches only as defenses to defendants' contract claims.

Defendants assert a general argument that the court must deny summary judgment on plaintiffs' contract claims because there are genuine issues of material fact "on the respective amounts of the parties' damages." Dkt. 95, at 6. In other words, defendants say that plaintiffs aren't entitled to judgment on plaintiffs' contract claims because defendants may be entitled to a larger amount of damages on their contract counterclaims against plaintiffs. But defendants have disavowed any argument that they have met the requirements for a setoff, Dkt. 95, at 14, and they cite no other authority for the view that a party can avoid summary judgment on one claim by contending that the party will prevail on a different claim. So the court rejects this contention and will consider the parties' arguments without deciding whether defendants' potential damages on their claims are greater than plaintiffs' potential damages.

### 1. Failure to pay invoices

Plaintiffs contend that defendants still owe millions of dollars in unpaid invoices. They base this claim on both the Uniform Commercial Code, which applies to sales of goods, and the Cooperation Agreement, which required payment within 10 days of receiving the goods. TZY Investment issued the invoices on defendants' purchase orders, and TZY Furniture signed the Cooperation Agreement, but neither side distinguishes the two plaintiffs for the purpose of this claim, so the court won't either.

Defendants don't deny that they failed to pay for all the furniture they ordered, but they contend that they don't owe plaintiffs money for two reasons. The first reason doesn't require extended discussion. Defendants contend that the parties modified their agreements to allow defendants to make late payments when plaintiffs continued to ship goods to defendants

despite the late payments. It is true that a contract may be modified through the parties' conduct, but "it is necessary that there be a meeting of the minds of the parties on all essential terms and conditions of the new provisions." WIS–JI 3030.[3]  And "[t]he acts relied upon to modify a prior contract must be unequivocal in character, and acts that are ambiguous as to whether a modification was intended are not sufficient to establish a modification." *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 853 (7th Cir. 2005) (applying Wisconsin law). Defendants don't even try to meet that standard. It is undisputed that plaintiffs repeatedly asked for payment, Dkt. 105, ¶ 118, and defendants cite no authority for the view that a party somehow "acquiesces" to a modification simply because it declines to immediately terminate a contract after the other party breaches.

Defendants' second argument has multiple parts. Defendants say that they were entitled to withhold payment because of quality defects in the furniture and untimely deliveries, and they rely on both the Cooperation Agreement and the UCC. The court concludes that defendants have failed to show that either source of authority excused defendants from making payments.

### a. Right to withhold payment under the Cooperation Agreement

### 1) AFG's rights under the Cooperation Agreement

The first question raised by defendants' reliance on the Cooperation Agreement is whether both defendants have rights under the agreement. AFG did not sign the agreement and is not mentioned in it. The only signatories are TZY Furniture and Z Outdoor. Defendants

---

[3] Both sides assume that Wisconsin law governs all of the claims and counterclaims at issue, so the court has done the same. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

say that AFG should be treated as party to the agreement because TZY Furniture and Z Outdoor "modified their contract, both orally and by their respective conduct and performance, to include AFG under the terms of the Cooperation Agreement." Dkt. 95, at 27.

Defendants don't acknowledge the inconsistency between their position now and their position in previous briefs, which was that "[t]he only Defendant who is a party to the Cooperation Agreement in this case is Z Outdoor." Dkt. 18, at 7. But regardless whether defendants' previous statements represent a judicial admission, defendants again fail to acknowledge the standard for modifying a contract, and the evidence they cite to show a modification doesn't satisfy the standard.

First, defendants say that witnesses for both sides testified that "Z Outdoor and AFG should be treated as the same company, and that both [companies should] be included within the parameters of the Cooperation Agreement." Dkt. 95, at 27. But the deposition testimony defendants cite doesn't support the view that TZY Furniture, Z Outdoor, and AFG all agreed to modify the Cooperation Agreement to add AFG as a party. Pete Hill (the CFO for Z Outdoor and AFG) said that "we created AFG for the benefit of both Z Outdoor Living and TZY, so we ran AFG under the same parameters as Z Outdoor Living." Dkt. 82 (Hill Dep. 56:14–16). Li Yang (the owner of TZY Furniture) answered "Correct" in response to the question, "as far . . . Taizhou's approach and your approach to the business, you treated AFG the same as Z Outdoor?" Dkt. 94 (Yang Dep. 29:20–23). These two ambiguous statements show that plaintiffs were aware of AFG's involvement in the operation and that Z Outdoor and AFG were cooperating to sell plaintiffs' furniture. But no reasonable jury could find that there was a meeting of the minds that AFG was subject to the rights and obligations of the Cooperation Agreement simply because plaintiffs didn't object to the orders that AFG placed.

8

Second, defendants say that the parties "clearly intended" to modify the Cooperation Agreement "in order to increase the overall sales, because Menards otherwise would cap the limit of product that it would purchase from Z Outdoor, and, indirectly, from TZY." Dkt. 95, 28. That may have been the reason why AFG started submitting its own purchase orders to plaintiffs, but defendants cite no evidence that plaintiffs were even aware of this reason, let alone that TZY Furniture agreed to modify the Cooperation Agreement to allow increased sales to Menards.

Third, defendants say that TZY Furniture "acquiesced" to "splitting . . . the business between two entities," as shown by "ongoing email correspondence." *Id.* at 28–29. But "acquiescence" isn't the standard for modification, and defendants don't cite any emails showing that the parties agreed to a modification. So the court rejects defendants' contention that the parties modified the Cooperation Agreement to include AFG.

### 2) Z Outdoor's rights under the Cooperation Agreement

Z Outdoor relies on three provisions in the Cooperation Agreement in an attempt to show that it was entitled to withhold payments for defective products.[4] First, a section called "Customer Service" states that "TZY shall be responsible for all quality related defective products." Dkt. 93-11, § 3.E. Second, a section called "Indemnification by TZY" states that "TZY hereby agrees to indemnify and hold CPA and Z Outdoor and its representatives and agents harmless against any and all Damages which CPA and Z Outdoor may suffer, incur or become subjected to arising out of, based upon or otherwise in respect of any defective [sic] or product liability claims." *Id.*, § 5.b. Third, a section called "Purchase Orders" states that

---

[4] The Cooperation Agreement does not contain any provisions about the consequence of a late delivery, and defendants don't contend that any untimely deliveries violated the agreement.

"purchase orders will allow for the Z Outdoor margin to be at least the following margins for each market: (1) mass—12%; (2) e-commerce—15%; (3) specialty/contract—22%, exception may be on some competitive projects or situations." *Id.*, § 2.F

Z Outdoor construes these provisions to mean that "quality-related deductions from a purchase order are always taken from TZY's share." Dkt. 95, at 24–25. But the provisions don't say that. The indemnification clause and the clause setting forth Z Outdoor's margins are in separate sections of the agreement, and neither clause refers to the other. The purchase orders clause provides guidance for determining the price listed in the purchase orders. It says nothing about how to handle claims for defective goods. And the customer service and indemnification clauses say that Z Outdoor has the right to be compensated for quality-related defects, but they don't say that Z Outdoor has the right to withhold payments.

The bottom line is that Z Outdoor identifies no basis for reading into the Cooperation Agreement a right to deduct the cost of perceived defects from TZY Furniture's share of revenue, so the court rejects Z Outdoor's argument based on the agreement. But as will be explained below, even if the agreement did give Z Outdoor such a right, the argument would still fail because Z Outdoor has failed to adduce admissible evidence that TZY Furniture was responsible for any defects or that Z Outdoor suffered damages as a result of such defects.

### b.  Right to withhold payment under the UCC

Defendants' arguments under the UCC are confusing and internally inconsistent. Defendants first say that they "aren't pursuing claims for defective goods under the UCC" and they "also are not arguing for a specific set-off under the UCC." Dkt. 95, at 14–15. But later in their brief, they say that they "were entitled to withhold payment under" the UCC. *Id.* at 29. Regardless whether defendants forfeited this argument, it fails.

10

Under the UCC, "[t]he buyer on notifying the seller of the buyer's intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." Wis. Stat. § 402.717. Defendants say that they complied with § 402.717 by "routinely communicat[ing]" with plaintiffs about "late shipments, defects, and quality issues." Dkt. 95, at 33. But the only evidence they cite in support of that assertion are conclusory declarations from defendants' owners and employees. *See* Dkt. 104, ¶¶ 86–88. Defendants don't identify any specific products from a specific purchase order that they flagged as late or defective. In any event, complaining to plaintiffs about their products or service isn't the same thing as notifying them about a deduction. Defendants don't allege that they ever informed plaintiffs that they were going to deduct payment as a result of damages caused by defective furniture or late deliveries, so this argument fails.

In a footnote, defendants contend that they were entitled to deduct payments for late deliveries "[f]or substantially the same reasons" that they were entitled to deduct payments for defective goods. Dkt. 95, at 34 n.4. That contention fails for the same reasons. Defendants adduce no evidence or even allege that they ever notified defendants that they were going to deduct payments for late deliveries.

So the court concludes that plaintiffs are entitled to summary judgment on their claim that Z Outdoor and AFG breached their agreements with plaintiffs by failing to pay for furniture they ordered.

### c.  Amount owed

The remaining issue on this claim is how much defendants owe. Relying on defendants' own records, plaintiffs say that Z Outdoor owes $7,146,223.20 and AFG owes $7,351,819.34

11

in unpaid invoices. *See* Dkt. 105, ¶¶ 35, 54. Defendants cite no contrary evidence but only repeat that they were entitled to take deductions for defective goods and late deliveries. The court has rejected those arguments, so the court finds that plaintiffs' claimed amounts are undisputed.

### 2. Failure to repay loans

TZY Furniture contends that Z Outdoor owes TZY Furniture $2.85 million that TZY Furniture loaned Z Outdoor for operating expenses. Z Outdoor doesn't dispute the amount that it borrowed from TZY Furniture. Rather, it says that the loan was converted into equity under the terms of the Cooperation Agreement. *See* Dkt. 105, ¶ 122.

The agreement states that TZY Furniture will loan Z Outdoor $150,000 a month from January 2017 through December 2018. Dkt. 93-11, § 2.A. If Z Outdoor met its sales targets for 2017 and 2018, the loan would convert to a 50 percent equity ownership in Z Outdoor. *Id.*, § 2.B.  But if Z Outdoor failed to meet its sales targets, then Z Outdoor would have to repay the loan. *Id.* The agreement also states that "[t]he conversion of equity will also depend on the 2 year cooperation period, a positive relationship and 'Z's' financial performance." *Id.*

Plaintiffs say that the loans didn't convert to equity because Z Outdoor didn't meet its sales targets, maintain a positive relationship with TZY Furniture, or perform adequately. The undisputed facts show that Z Outdoor didn't meet its sales target, so the court need not consider the other contractual requirements.

The agreement gave Z Outdoor a target of $6 million for "2017/2018" and $20 million for "2018/2019." *Id.*, § 2.D. The parties don't clearly identify what precise time periods were covered or what Z Outdoor's sales were during the relevant periods. But it is undisputed that Z Outdoor's sales weren't enough on their own to meet the target but that the target would be

met if AFG's sales were added to Z Outdoor's sales. *See* Dkt. 105, ¶ 93. So the question is whether Z Outdoor is entitled to add AFG's sales to its own.

Defendants say that Z Outdoor is so entitled because AFG should be considered a party to the Cooperation Agreement. But the court has already rejected the argument that the parties modified the agreement to add AFG as a party. Defendants' argument for modification is the same on this claim as it was for the last claim, so the argument fails for the reasons already discussed.

Defendants raise no other defenses to this claim, so the court will grant summary judgment to TZY Furniture.

## B. Defendants' counterclaims

Defendants contend that plaintiffs breached their agreements with defendants in the following ways: (1) providing defective furniture; (2) failing to make timely deliveries; (3) failing to invest in a new facility; (4) stopping loan payments; and (5) failing to pay a bonus to Casual Products. Defendants also contend that plaintiffs breached their duty of good faith and fair dealing.

Plaintiffs contend that they are entitled to summary judgment on each of these claims. First, they say that defendants haven't adduced admissible evidence in support of the first three claims. Second, they say that any breaches related to the fourth and fifth claim were justified by earlier, material breaches by defendants. Third, they say that defendants haven't adduced evidence of damages. Fourth, they say that the bad faith claim is redundant of the contract claims. The court agrees with each of these contentions, with the exception of plaintiffs' contention that they are entitled to summary judgment on defendants' claim for failing to pay bonuses.

### 1. Furniture defects

Defendants contend that they are entitled to damages for defective products that plaintiffs provided. It isn't clear whether they are relying on just the Cooperation Agreement or both the agreement and the UCC, but the court will assume that defendants are relying on both. As the court has already discussed, AFG wasn't a party to the Cooperation Agreement, so AFG can't rely on that agreement, and AFG's remedies are limited to those available under the UCC. The court will first consider both defendants' claims under the UCC, and then Z Outdoor's claim under the Cooperation Agreement.

### a. UCC (both defendants)

There is no dispute that the furniture plaintiffs sold to defendants came with an implied warranty of merchantability under Wis. Stat. § 402.314. This means that the furniture needed to be "fit for the ordinary purposes for which such goods are used" and "[p]ass without objection in the trade under the contract description."

If defendants mean to assert a claim under the UCC, that claim fails for lack of evidence. Defendants rely entirely on allegations in the declarations of their owners and employees in an attempt to show that they suffered damages because plaintiffs provided defective furniture. Defendants say that they personally observed furniture from plaintiffs that had "serious quality issues," including scratches, scuffs, poor sewing, and poor welding, when they visited the sales floor of one of their customers in the United States. Dkt. 95, at 17–18.

Defendants don't explain why they believe that any particular piece of furniture didn't meet the standard for merchantability under § 402.314. But even if the court assumes that the furniture that defendants saw didn't meet the merchantability standard and that plaintiffs were responsible for the defects, it's not enough to allege that some of the furniture was defective.

Rather, defendants must show a connection between any alleged defects they observed and any damages they suffered. *See Home Casual Enter. Ltd. v. Home Casual, LLC*, No. 11-cv-655-wmc, 2012 WL 13041994, at *16 (W.D. Wis. Nov. 13, 2012) (rejecting breach-of-contract claim based on alleged defects in goods because the parties "offered no admissible evidence on summary judgment to establish . . . the extent of their damages from any of the alleged defects"). Defendants haven't done that. In fact, defendants haven't even attempted to place a value on the alleged defects they saw.

Defendants acknowledge that, under § 402.714(2), the measure of damages for defective goods is generally "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." But they note that there is an exception to the rule if "special circumstances show proximate damages of a different amount." Defendants say that "special circumstances" apply in this case because they "never possessed the goods." Dkt. 95, at 32. Instead, the goods were shipped directly from China to retailers in the United States. For this reason, defendants say that "the penalties that the retailers imposed" for defects are the proper measure of damages. *Id.* In their proposed findings of fact, defendants cite declarations in which defendants' employees claim specific amounts that retailers such as Menards deducted as a result of alleged defects in the furniture. Dkt. 104, ¶¶ 95, 98, 116–17.

Defendants don't explain why their own failure to inspect the goods they purchased qualifies as a "special circumstance" under the UCC. But even if it could be, defendants' reliance on § 402.714(2) fails for multiple reasons. First, defendants cite no documentary evidence supporting any of their figures or even showing that any retailer took a deduction for defective products. These employees might have personal knowledge of a deduction, but they'd

be relying on either documents from the retailers or conversations with them to determine the reasons for the deduction. So the employee declarations violate both the rule against hearsay and the best evidence rule. *See* Fed. R. Evid. 106; Fed. R. Evid. 802.

Second, and more fundamentally, defendants don't tie any particular deduction to a particular defect, and they adduce no evidence that any of the deductions were the result of a quality defect in the manufacturing rather than a design defect (for which the parties agree Z Outdoor was responsible) or damage incurred during shipment, after defendants took title of the merchandise. In fact, defendants don't even cite evidence that the furniture from which retailers took deductions actually was defective, and they admit that retailers often claimed deductions for nondefective merchandise.

For these, reasons, defendants' claim under the UCC fails.

### b. Cooperation Agreement (Z Outdoor)

Z Outdoor again relies on the provision in the Cooperation Agreement stating that "TZY shall be responsible for all quality related defects" Dkt. 93-11, § 3.E. Z Outdoor says that the agreement holds TZY Investment responsible for all quality-related defects, so it doesn't matter "when the quality-related defects arose." Dkt. 95, at 25.

Z Outdoor's claim fares no better under the Cooperation Agreement than it did under the UCC. Z Outdoor interprets this provision to mean that TZY Furniture will reimburse Z Outdoor for any deductions that a retailer claims for any reason, but that's not what the provision says. It doesn't relieve Z Outdoor of the burden of proving that the goods were in fact defective, that any defects were "quality related," or that any damages it incurred were the result of those defects. As already discussed, defendants have failed to adduce admissible

evidence to show any of those things, so its breach-of-contract counterclaim based on alleged furniture defects fails.

### 2. Delivery delays

Defendants say that deliveries from plaintiffs often arrived months late, and, as a result, defendants were fined by retailers. This claim also fails for lack of admissible evidence.

As an initial matter, defendants don't identify a contractual basis for determining that a particular shipment was untimely. For example, they say that "they informed" plaintiffs when they wanted a particular order, *see* Dkt. 104, ¶¶ 37–38, but they don't cite evidence that plaintiffs actually agreed to a date. They also allege generally that deliveries were "late," *see id.*, ¶ 39, but they don't identify their metric for making that determination. Again, they simply cite more declarations of their employees; they don't cite any purchase orders or invoices that promised a shipment by a particular date.

A related problem is that the declarations are simply hearsay. Defendants say that they have "first-hand knowledge" of the delivery times, Dkt. 95, at 17, but they admit that they never took possession of the goods. So defendants would have been relying on reports from third parties. Defendants don't provide testimony or documentation from those parties, so they don't have admissible evidence of delivery times.

Yet another problem is that defendants haven't adduced evidence that plaintiffs were at fault for a particular delay. It's undisputed that plaintiffs sold the merchandise to defendants in China. Dkt. 105, ¶¶ 112–13. And defendants don't dispute plaintiffs' contention that title to the merchandise, along with the responsibility for its transport, passed to defendants at the point of sale. *See* Dkt. 91, at 25 (citing Wis. Stat. § 402.401(2)(a)). Defendants don't cite any

evidence—even declarations—that identifies whether delays occurred before or after defendants took title in China.

Finally, defendants cite no evidence other than their own declarations to show that any retailer took deductions because of an untimely delivery. Again, even if defendants have personal knowledge that retailers took a deduction, they don't have personal knowledge of the reason for the deduction, so the declarations are inadmissible hearsay.

The court will grant defendants' motion for summary judgment on this counterclaim.

### 3. Failing to invest

This claim is based on § 3.G. of the Cooperation Agreement, which states, "TZY agrees to invest RMB 320.0 million to establish a dedicated facility for the development and manufacturing of solid surface tabletops, including MGO tops, GRC tops and Porcelain Tile tops, firepits and umbrellas." Dkt. 93-11. But defendants don't allege that TZY Furniture failed to make the required investment. Rather, they allege that TZY Furniture failed to complete the facility by 2018. The Cooperation Agreement doesn't require completion of the facility by a particular date, so there is no breach of the agreement. Defendants instead cite the declaration of Don Corning (Z Outdoor and AFG's owner), who avers that TZY Furniture "promised" that the facility "would be operational in 2018." Dkt. 98, ¶ 19. Corning provides no basis for that allegation, and defendants do not even try to show that the alleged promise satisfies the elements for a contract. So plaintiffs are entitled to summary judgment on this counterclaim.

### 4. Monthly payments

As already discussed, the Cooperation Agreement required TZY Furniture to loan Z Outdoor $150,000 a month from January 2017 through December 2018. Dkt. 93-11, § 2.A. Plaintiffs admit that loan disbursements stopped in August 2018, but they contend that TZY

Furniture's actions were justified because Z Outdoor had already breached the Cooperation Agreement in multiple ways, including by: (1) failing to pay for furniture, as required by § 3.G; (2) using the loans for matters other than operational expenses, as prohibited by § 2.A; and (3) falsifying financial records, as prohibited by § 2.I. The court agrees with plaintiffs that Z Outdoor's failure to pay for the furniture ordered justified TZY Furniture's decision to stop making loan disbursements, so it isn't necessary to consider the other breaches alleged by plaintiffs.

As both sides acknowledge, "a material breach by one party to a contract excuses subsequent performance by the other party." *Entzminger v. Ford Motor Co.*, 47 Wis. 2d 751, 755, 177 N.W.2d 899, 902 (1970). A breach is material if it destroys the essential object of the agreement or deprives the non-breaching party of a benefit that the party reasonably expected. *Int'l Prod. Specialists, Inc. v. Schwing Am., Inc.*, 580 F.3d 587, 595 (7th Cir. 2009) (applying Wisconsin law). Generally, a breach isn't material if the other party wasn't prejudiced by the breach. *See Ranes v. Am. Family Mut. Ins. Co.*, 219 Wis. 2d 49, 58, 580 N.W.2d 197, 200 (1998).

In this case, it is undisputed that, by August 2018, Z Outdoor had failed to pay TZY Furniture millions of dollars for furniture that Z Outdoor had ordered. Dkt. 105, ¶¶ 115–19. In fact, Z Outdoor admits that it was falsely telling TZY Furniture that Z Outdoor wasn't receiving payments from retailers so that it could withhold payments from TZY Furniture. *Id.*, ¶ 119. The primary purpose of the Cooperation Agreement was to sell furniture, so Z Outdoor's failure to pay for substantial amounts of that furniture qualifies as a material breach. *See Prof'l Serv. Network, Inc. v. Am. All. Holding Co.*, 238 F.3d 897, 901 (7th Cir. 2001) (paying only 75 percent of what was owed qualified as a material breach). Z Outdoor's repeated failures to pay

what it owed communicated that it likely would continue falling further behind on its payments. TZY Furniture was entitled to withhold loan disbursements at least until Z Outdoor cured the breach by substantially paying off its debt, which Z Outdoor failed to do. *See Volvo Trucks N. Am. v. State, Dept. of Transp.*, 2010 WI 15, ¶ 47, 323 Wis. 2d 294, 313, 779 N.W.2d 423, 432 (breaching party may cure a breach if it "stop[s] the offending conduct and . . . substantially perform[s] the contract"). So defendants' counterclaim based on TZY Furniture's failure to continue monthly disbursements after August 2018 fails.

**5. Failure to pay bonuses to Casual Products**

Section 2.J of the Cooperation Agreement says that "TZY shall pay [Casual Products of America] a 6% bonus on the first $50 million of new business purchase orders submitted to TZY by Z Outdoor. This bonus shall be paid no later than 10 days after the purchase order is issued to TZY."[5] Defendants contend that TZY Furniture breached this provision by failing to make any bonus payments.

TZY Furniture doesn't allege that it ever made any bonus payments to Casual Products. And it devotes only one sentence of its opening brief to the counterclaim, saying that its failure to pay the bonus "was preceded—and dwarfed—by Z [Outdoor's] failures to timely pay TZY the full amounts due under the purchase orders, invoices, and Cooperation Agreement." Dkt. 91, at 42.

The court will assume that a material breach by Z Outdoor would relieve TZY Furniture of its obligation to pay bonuses to a third party like Casual Products. But even with that assumption, TZY Furniture hasn't shown that it is entitled to summary judgment on this claim.

---

[5] The parties don't explain why the bonuses were supposed to go to Casual Products rather than Z Outdoor, but neither side treats that issue as relevant, so the court won't either.

First, TZY Furniture doesn't cite any evidence to support its assertion that Z Outdoor's breaches preceded its breach of the bonus provision. As the text of § 2.J makes clear, TZY Furniture was supposed to pay bonuses "no later than 10 days after" a purchase order is issued. TZY Furniture doesn't lay out a timeline for when the first bonus payment was due and when Z Outdoor first began withholding payments.

Second, TZY Furniture doesn't even try to show that any breaches by Z Outdoor at that point were material. TZY Furniture raises different arguments in its reply brief and in response to defendants' proposed findings of fact. *See* Dkt. 105, ¶ 59; Dkt. 106, at 24. But defendants didn't have an opportunity to respond to those arguments, so they are forfeited for the purpose of plaintiffs' motion for summary judgment, and the court will deny plaintiffs' motion on this counterclaim.

### 6. Good faith and fair dealing

Defendants contend that plaintiffs breached their duty of good faith and fair dealing because they "improperly competed against Z Outdoor, never even attempted to meet [their] obligation to build a new factory, failed to meet [their] financial obligations to Z Outdoor (which put Z Outdoor in an extremely precarious financial position) and, perhaps most importantly, completely failed to deliver goods which met basic quality standards on a timely basis." Dkt. 95, at 40. The court dismissed defendants' bad faith claim based on allegations of improper competition in a previous order, *see* Dkt. 65, at 6-7, so it isn't necessary to consider the competition aspect of this claim again. The duty of good faith may entail obligations that are not expressly stated in the contract, *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203, 213 (Ct. App. 1995), but most of the other aspects of the good faith/fair dealing claim all relate to breach-of-contract issues that the court has already considered. The

only potential claim not already addressed is Z Outdoor's claim about TZY Furniture's failure to build a factory. If Z Outdoor had evidence that TZY Furniture "never even attempted to meet its obligation to build a new factory," that might be the basis for a bad-faith claim. But Z Outdoor hasn't adduced any evidence about what TZY Furniture "attempted" to do. Rather, Z Outdoor says only that TZY Furniture failed to open the factory in 2018. That one fact doesn't provide a reasonable basis for inferring that TZY Furniture engaged in the type of conduct that qualifies as bad faith, such as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance." *Id.* So the court will dismiss this counterclaim.

### 7. Damages for defendants' failed businesses

As already discussed, defendants have failed to adduce admissible evidence that plaintiffs breached their agreements with defendants or that defendants suffered damages as a result of a breach, with the possible exception of the bonuses counterclaim. For the sake of completeness, the court will briefly address a broader damages argument to which defendants devote a substantial portion of their brief. *See* Dkt 95, at 6–13. Specifically, defendants say that plaintiffs' failures to provide loans, quality products, and timely deliveries is what led defendants to go out of business, so defendants are entitled to damages for the value of those businesses.

Even if defendants had shown a breach, this claim would fail for multiple reasons. First, defendants offer nothing but conclusory declarations based on hearsay to show that they lost any business as a result of plaintiffs' conduct. Second, defendants' only evidence on the value of the businesses is Don Corning's declaration. The court will assume that Corning could offer

such an opinion despite defendants' failure to disclose him as an expert. *See* Fed. R. Evid. 701, 2000 Advisory Committee Notes ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert."). But Corning's only basis for his opinion that his businesses were worth $30 million is his statement that he received an offer of $24.5 million to buy another "much larger" business that he owned. Dkt. 98, ¶¶ 57–59. Corning provides no evidence that he received such an offer and no basis for concluding that any offer he did receive is a reasonable metric for valuing Z Outdoor or AFG. Like so many of defendants' other arguments, this one fails because defendants haven't adduced admissible evidence to support it.

## C. Conclusion

Plaintiffs are entitled to summary judgment on their breach-of-contract claims and defendants' counterclaims, with the exception of defendants' counterclaim for TZY Furniture's failure to pay bonuses. Although defendants insist that plaintiffs provided defective goods and failed to make deliveries on time, it is well established that parties are required at summary judgment to "put up or shut up," and point to evidence that would allow a reasonable jury to rule in their favor. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Plaintiffs put in undisputed evidence that defendants breached their agreements, and defendants simply failed to do the same. In the absence of admissible evidence supporting their counterclaims and defenses, defendants cannot prevail.

Because plaintiffs have prevailed on their contract claims, the court will dismiss their claim for unjust enrichment against Z Outdoor and AFG because "a claim for unjust enrichment does not exist when the subject of the claim is addressed by a valid and enforceable

contract." *Roumann Consulting Inc. v. Symbiont Constr., Inc.*, No. 18-C-1551, 2019 WL 3501527, at *10 (E.D. Wis. Aug. 1, 2019) (citing *Cont'l Cas. Co. v. Wis. Patients Compensation Fund*, 164 Wis. 2d 110, 118 (Ct. App. 1991)). Plaintiffs' claims for fraudulent conveyances against defendants Z Outdoor, AFG, AMG, and Outdoor Brands remain unresolved.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for partial summary judgment, Dkt. 85, is GRANTED as to plaintiffs' breach-of-contract claims and as to defendants' counterclaims for breach of the duty of good faith and breach of contract related to furniture defects, delivery delays, failing to invest in a new factory, and failing to make monthly loan payments. Plaintiffs' motion is DENIED on defendants' breach-of-contract counterclaim for failing to pay bonuses.

2. The court will refrain from entering judgment on the breach-of-contract claims until the remaining claims are resolved.

3. Plaintiffs' claim for unjust enrichment against defendants Z Outdoor Living, LLC and AFG, LLC is DISMISSED as moot.

4. Plaintiffs' request for a status conference, Dkt. 118, is DENIED. Defendants may have until March 9, 2021, to file a notice of appearance from their counsel. If they fail to do so, plaintiffs may move for a default judgment on the remaining claims.

Entered March 2, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge